## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**SE PROPERTY HOLDINGS, LLC**,

      Plaintiff,

v.                             Case No. 3:13cv6/MCR/CJK

**HCB FINANCIAL CORP.**,

      Defendant.

_____/

## MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM ORDERS (DOCS. 353 AND 391) AND FINAL JUDGMENT (DOC. 392)

In support of its Motion for Relief from Orders (Docs. 353 and 391) (the "**Orders**") and Final Judgment (Doc. 392) (the "**Final Judgment**"), **HCB FINANCIAL CORP.** ("**HCB**") states as follows:

## INTRODUCTION

HCB respectfully suggests that this Court lacked subject matter jurisdiction over this case due to the application of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L No. 101-73, 103 Stat. 183 (1989) ("**FIRREA**"), which was not evaluated by the Court or addressed by the parties. Subject matter jurisdiction cannot we waived and can be raised at any time. Where a court lacks subject matter jurisdiction, any orders issued in such a case are void. Accordingly, the Court's post-trial Order (Doc. 353), second post-trial Order (Doc.

391), and Final Judgment (Doc. 392) are void because the Court lacked subject matter jurisdiction. *See* Fed. R. Civ. P. 60(b)(4).

First, SE Property Holdings, LLC ("**SE Property**") lacked standing to pursue its claims against HCB because SE Property does not qualify as a third-party beneficiary to the agreements ultimately assigned through Federal Deposit Insurance Corporation ("**FDIC**"), as Receiver for Central Progressive Bank ("**Central Progressive**") to HCB. Because SE Property lacked standing, this Court lacked subject matter jurisdiction over SE Property's claims, and the case must be dismissed.

Second, while SE Property's claims accrued prior to the failures of both Central Progressive and GulfSouth Private Bank ("**GulfSouth**"), SE Property sought relief specifically prohibited by 12 U.S.C. § 1821(j). Also, SE Property failed to exhaust its administrative remedies as required by 12 U.S.C. § 1821(d) prior to commencing this litigation. As a result, this Court lacked subject matter jurisdiction to consider any of SE Property's claims. *See* 12 U.S.C. 1821(j); *Pyramid Constr. Co., Inc. v. Wind River Petroleum, Inc.*, 866 F. Supp. 513 (D. Utah 1994) (12 U.S.C. § 1821(j)'s "broad and all-encompassing language evidences . . . prohibit[s] any interference with the RTC as a receiver – either directly or indirectly."). Also, according to Section 1821(d)(13)(D), **no court** has jurisdiction

to adjudicate SE Property's claims in this case. *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999).

## RELIEF REQUESTED

HCB moves for an order (a) vacating the Orders (Docs. 353 and 391) and the Final Judgment (Doc. 392) and (b) dismissing with prejudice SE Property's remaining claims.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2007, GulfSouth made a loan to North Tip Development, LLC ("**North Tip**") in the original principal amount of $10,635,000.00 (the "**North Tip Loan**"). Olson & Associates of NW Florida, Inc., Carl Richard Olson, Jr., Elaine Olson, Rupert Phillips, and Sandra Phillips (the "**Guarantors**") guaranteed the North Tip Loan. At the same time it made the North Tip Loan, GulfSouth entered into Non-Recourse Loan Participation Agreements (the "**Participation Agreements**") with each of Vision Bank ("**Vision**"), Bank of Vernon, and Central Progressive. (Doc. 101, ¶¶ 14, 17 at 4). Pursuant to the Participation Agreements, GulfSouth, as

---

[1] The Court is aware of the procedural history and background of this case. HCB does not seek to re-litigate the matters the Court considered throughout this case's prior proceedings. Rather, the following discussion establishes, in part, the factual predicate for the relief HCB seeks.

Originating Bank, sold or assigned to each of the Participating Banks[2] a pro-rata interest in the North Tip Loan. Each Participating Bank's *pro-rata* interest pursuant to the Participation Agreements was as follows:

| | |
|---|---|
| GulfSouth | 8.99% |
| Vision | 44.9% |
| Bank of Vernon | 1.21% |
| Central Progressive | 44.9% |
| Total | 100.00% |

After North Tip defaulted on the North Tip Loan, GulfSouth sued North Tip and, on December 8, 2009, obtained a foreclosure judgment (the "**Foreclosure Judgment**").[3] On January 7, 2010, after entry of the Foreclosure Judgment, GulfSouth purchased the real property securing the North Tip Loan (the "**Property**") at a foreclosure sale. (Doc. 101, ¶ 23 at 5). According to SE Property, after the foreclosure sale, GulfSouth transferred the Property to "entities related to the Participating Banks as tenants in common, with each entity having an undivided interest in the Property equal to each of the Participating Bank's interest in the [North Tip] Loan as set forth in the Participation Agreements."

---

[2] In its complaints (Docs. 1-4, 20, and 101), SE Property defined and made reference to Vision, Bank of Vernon, and Central Progressive as the "**Participating Banks**."

[3] *GulfSouth Private Bank v. North Tip Development, LLC, et al.*, Circuit Court of Walton County, Florida, Case No. 09-CA-002050 (the "**Foreclosure Case**").

Beginning in April 2010, GulfSouth and the Participating Banks disputed how to distribute the Property among them. On April 16, 2010, Vision sued GulfSouth (the "**Injunction Proceeding**")[4] to enjoin GulfSouth from distributing the Property in what it asserted was an inequitable manner contrary to the Participation Agreement between GulfSouth and Vision (the "**VB Participation Agreement**"). According to SE Property, its predecessor pre-merger, Vision subsequently dismissed the Injunction Proceeding "upon agreement by the parties to resolve the distribution of the [ ] Property and to assign each of the Participating Banks its pro-rata share of any deficiency judgment obtained."

On March 29, 2011, GulfSouth obtained a deficiency judgment against North Tip and the Guarantors in the amount of $10,371,604.03 (the "**Deficiency Judgment**"). SE Property averred that, in consideration of the dismissal of the Injunction Proceeding, GulfSouth and the Participating Banks (including Central Progressive) agreed to distribute the Property and collect on the Deficiency Judgment. According to SE Property, "[t]he Participating Banks agreed that SE Property could take the lead on post judgment collection efforts related to satisfying the Deficiency Judgment." (Doc. 101, ¶ 32 at 7). In addition, "[b]ased on the agreement between the Participating Banks that each of the Participating Banks

---

[4] *Vision Bank v. GulfSouth Private Bank*, Circuit Court of Okaloosa County, Florida, Case No. 2010-CA-002219.

would be assigned their respective pro-rata interest of the Deficiency Judgment, [Vision] sold its interest in the Property to [Central Progressive]." *Id.*, ¶ 34 at 8.

On November 18, 2011, the Louisiana Office of Financial Institutions closed Central Progressive and appointed FDIC as Receiver of Central Progressive.[5] That same day, FDIC, as receiver of Central Progressive, sold to First NBC Bank (**"First NBC"**) certain of Central Progressive's assets, including its interest(s) in the North Tip Loan and the Deficiency Judgment.[6] (Doc. 353 at 8).

In February 2012, Vision surrendered its bank charter to the Florida Department of Financial Regulation and, thereafter, merged into SE Property, a non-banking entity and wholly owned subsidiary of Park National Corporation (**"PRK"**).[7] and SE Property succeeded to Vision's interests in the North Tip Loan

---

[5] The FDIC receivership began on November 18, 2011, when the Louisiana Office of Financial Institutions closed Central Progressive and appointed FDIC as Receiver of Central Progressive. The Central Progressive/FDIC receivership closed on November 18, 2014. *FDIC, Failed Bank Information, Information for Central Progressive Bank, Lacombe, LA.* https://www.fdic.gov/bank/individual/failed/centralprog.html#receivership; *see Notice to all Interested Parties of the Termination of the Receivership of 10413, Central Progressive Bank Lacombe, LA.* 79 Fed. Reg. 42513 (July 22, 2014).

[6] *See, generally*, Whole Bank Purchase and Assumption Agreement between FDIC, as Receiver of Central Progressive, and First NBC, dated as of November 18, 2011. https://www.fdic.gov/bank/individual/failed/centralprog_p_and_a.pdf.

[7] The February 2012 merger occurred on the heels of a bankruptcy court-ordered examination of Vision, which revealed a United States Securities and Exchange

and the Deficiency Judgment. Thereafter, SE Property continued to seek partition and assignment of the Deficiency Judgment; however, SE Property never received an assignment of any portion of the Deficiency Judgment.

On May 2, 2012, GulfSouth sued SE Property, First NBC, and Bank of Vernon, seeking a declaratory judgment regarding partition and distribution of the Deficiency Judgment (the "**GulfSouth Declaratory Action**").[8] (Doc. 353 at 9). SE Property clearly wanted the Deficiency Judgment to be partitioned, while First NBC wanted the Deficiency Judgment to remain whole. (Doc. 353 at 9).

On May 4, 2012, First NBC assigned to HCB its interests in the North Tip Loan and the Deficiency Judgment, which FDIC, as Receiver for Central Progressive, had assigned to First NBC. Then, on June 26, 2012, GulfSouth assigned to HCB its interests in the North Tip Loan and the Deficiency Judgment. GulfSouth also assigned to HCB its role as Originating Bank under the Participation Agreements. Two days later, on June 28, 2012, GulfSouth dismissed the GulfSouth Declaratory Action. The following day, Bank of Vernon assigned to HCB its interests in the North Tip Loan and the Deficiency Judgment.

---

Commission ("**SEC**") investigation into loan asset valuations and false SEC reporting by PRK, relating to its subsidiary, Vision.

[8] *GulfSouth Private Bank v. First NBC Bank, et al.*, Circuit Court of Okaloosa County, Florida, Case No. 2012 CA 002014.

On August 27, 2012, SE Property filed this case against GulfSouth, First NBC, and Bank of Vernon.[9] By that time, (a) the Louisiana Office of Financial Institutions had closed Central Progressive and appointed FDIC as Receiver of Central Progressive; (b) FDIC, as Receiver of Central Progressive, had assigned to First NBC all of Central Progressive's interest(s) in the North Tip Loan and the Deficiency Judgment (Doc. 1-4, ¶ 4 at 2, ¶ 14 at 4 n.4); and (c) First NBC had assigned to HCB all of First NBC's interest(s) in the North Tip Loan and the Deficiency Judgment. Accordingly, HCB is FDIC's successor in interest with respect to Central Progressive's interests in the North Tip Loan and the Deficiency Judgment.

On October 19, 2012, less than two months after SE Property filed its original complaint in this case, GulfSouth failed. The State of Florida Office of Financial Regulation appointed FDIC as Receiver of GulfSouth. (Doc. 1-1). On January 4, 2013, FDIC, as Receiver of GulfSouth, removed the instant case from the Circuit Court of Okaloosa County, Florida. (Doc. 1-1).

**SE Property's Complaints and Allegations**

In its original Complaint (Doc. 1-4), SE Property alleged specifically that after GulfSouth obtained the Foreclosure Judgment, GulfSouth and the

_____

[9] *SE Property Holdings, LLC, v. GulfSouth Private Bank, et al.*, Circuit Court of Okaloosa County, Florida, Case No. 2012 CA 003841. (Doc. 1-4).

Participating Banks acquired the Property as tenants in common. Then, GulfSouth and the Participating Banks (including Central Progressive) developed a dispute regarding the distribution of the Property. After GulfSouth obtained the Deficiency Judgment, GulfSouth and the Participating Banks (including First NBC, as successor to FDIC, as Receiver for Central Progressive) developed another dispute with respect to the partition and distribution of the Deficiency Judgment. SE Property alleged that "[a] bona fide, actual, present justifiable [sic] controversy exists between GulfSouth and the Participating Banks concerning their rights and and obligations under the Participation Agreement[s] and the Deficiency Judgment." As a result, SE Property sought a declaratory judgment as to all of the Defendants, including First NBC, as successor in interest to FDIC, as Receiver for Central Progressive, with respect to "an adjudication of the legal rights and obligations of GulfSouth and the Participating Banks under the Participation Agreements."

On August 13, 2013, SE Property filed its Second Amended Complaint. (Doc. 101). In its Second Amended Complaint, SE Property alleged that GulfSouth and the Participating Banks (including Central Progressive) entered into an agreement to distribute the Property and the Deficiency Judgment on a pro-rata basis. They agreed also to distribute the Property and collect on the Deficiency Judgment. Specifically, "[t]he Participating Banks agreed that SE Property could

take the lead on post judgment collection efforts related to satisfying the Deficiency Judgment." Also, according to SE Property, "[t]he Participating Banks – GulfSouth, [Bank of Vernon] and [Central Progressive] – all previously agreed to allow SE Property to take the lead on collection efforts related to the Deficiency Judgment." (Doc. 101, ¶ 168 at 33). Moreover, "[t]he Participating Banks all previously agreed to the pro-rata assignments of the Deficiency Judgment." (Doc. 101, ¶ 169 at 33). In addition, "GulfSouth, [Bank of Vernon] and [Central Progressive] engaged in negotiations with Judgment-Debtor Rupert Phillips to assign their respective interests to HCB," which "were intentionally concealed from SE Property." (Doc. 101, ¶ 171 at 33).

Ultimately, SE Property sought a declaratory judgment that, among other things, would assign to SE Property the right to undertake collection efforts with respect to the entire Deficiency Judgment. (Doc. 101 at 36). It also sought money damages related to an alleged conspiracy among HCB, Central Progressive, Bank of Vernon, and GulfSouth for GulfSouth's alleged breach of its fiduciary duties to SE Property. (Doc. 101, ¶¶ 206-210 at 40-41). Finally, SE Property sought permanent injunctive relief against HCB requiring HCB to collect the Deficiency Judgment and to prohibit HCB from "distributing any monies obtained as result of the collection efforts [on the Deficiency Judgment] to any entity besides SE Property without Court permission." (Doc. 101 at 47). In essence, SE Property

asked the Court to realign payment priorities under the Participation Agreements and effectively subordinate HCB's interests under the Deficiency Judgment (including its interests as successor to First NBC, as successor to FDIC, as Receiver of Central Progressive) to SE Property's interests.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 60(b)(4) provides as follows:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding [if]

*    *    *

> (4)    the judgment is void . . .

Fed. R. Civ. P. 60(b)(4). While motions under Rule 60(b)(4) must be brought "within a reasonable time," the Eleventh Circuit has commented that "virtually any time is reasonable for challenges to void judgments under Rule 60(b)(4)." *Harris v. Corr. Corp. of Am.*, 332 F. Appx. 593, 595 (11th Cir. 2009) (citing *Hertz Corp. v. Alamo Rent-A-Car, Inc.,* 16 F.3d 1126, 1130-31 (11th Cir. 1994)).

In *United Student Aid Funds, Inc. v. Espinosa*, the Supreme Court explained that a judgment is void for the purposes of Rule 60(b)(4) when it is "a legal nullity." 559 U.S. 260, 271 (2010) (citing BLACK'S LAW DICTIONARY 1822 (3d ed. 1933)). A void judgment, the Court emphasized, "is so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final."

*Id*. (citing RESTATEMENT (SECOND) OF JUDGMENTS 22 (1980)). But the list of such infirmities "is exceedingly short." *Id*. Highlighting the limited scope of the rule, the Court in *Espinosa* observed that not all jurisdictional errors would result in finding that a judgment is void. *Id*. Relief is instead reserved for "only the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id*. (*quoting Nemaizer v. Baker,* 793 F.2d 58, 65 (2d Cir. 1986).

In *Burke v. Smith*, the Eleventh Circuit explained that a judgment is void for the purposes of Rule 60(b)(4) "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." 252 F.3d 1260, 1263 (11th Cir. 2001) (citing *In re Edwards,* 962 F.2d 641, 644 (7th Cir. 1992)). The court in *Burke* added, however, that "[a] judgment is also void for Rule 60(b)(4) purposes if the rendering court was powerless to enter it." *Id*. (*citing Gschwind v. Cessna Aircraft Co.,* 232 F.3d 1342, 1346 (10th Cir. 2000)). The burden of proof to make such showing rests with the movant. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1298-99 (11th Cir. 2003).

## ARGUMENT

As set forth above, this case involves two failed banks: GulfSouth and Central Progressive. FDIC was appointed as receiver for both banks. In the earlier proceedings before the Court, the parties focused almost exclusively on the relationship between GulfSouth and HCB, overlooking HCB's status as the

ultimate successor in interest to FDIC, as Receiver of Central Progressive.[10] SE Property's post-receivership claims against HCB originated in Vision's pre-receivership relationships with both Central Progressive and GulfSouth.

**I.     SE PROPERTY LACKED STANDING TO SUE FIRST NBC AND HCB BECAUSE IT WAS NEVER A THIRD PARTY BENEFICIARY TO THE PURCHASE AND ASSUMPTION AGREEMENT BETWEEN FDIC AND FIRST NBC AS TO CENTRAL PROGRESSIVE.**

SE Property has pleaded and argued that HCB either breached the parties' pre-receivership agreements to partition the Deficiency Judgment, breached the parties alleged agreement to allow SE Property take the lead on collection of the Deficiency Judgment, or induced other parties to breach those pre-receivership agreements. Such liabilities sound wholly in third-party beneficiary law.[11] The Eleventh Circuit has rejected third-party beneficiary claims similar to those articulated by SE Property.

According to the Eleventh Circuit, "[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d

_____

[10] HCB obtained its interest from First NBC, as assignee of FDIC, as Receiver of Central Progressive.

[11] The key consideration is not only the pleading itself, but also the functional nature of the claims and relief sought. Thus, one must look to the four corners of the complaint in determining standing and jurisdiction. If standing and jurisdiction, as pleaded in the complaint fails, jurisdiction as a whole fails, and the complaint must be dismissed.

927, 932 (11th Cir. 2013) (citations omitted); *RPM Nautical Found., Inc. v. Centennial Bank*, 603 Fed. App'x. 836, 839-40 (11th Cir. 2015). Pursuant to *Interface Kanner* and *RPM Nautical's* rationale, SE Property only had standing to sue HCB for breaches of the agreements related to the partition of the Deficiency Judgment and allowing SE Property to take the lead on collection efforts if it can prove that it was an intended third-party beneficiary under the Purchase and Assumption Agreement between FDIC and First NBC. *Interface Kanner*, 704 F.3d at 932-33; *RPM Nautical*, 603 Fed. App'x. at 839-40. Because SE Property was never an intended third-party beneficiary under the Purchase and Assumption Agreement, it lacked standing to sue First NBC and HCB, and this Court lacked subject matter jurisdiction. *Interface Kanner*, 704 F.3d at 932-33; *RPM Nautical*, 603 Fed. App'x. at 839-40.

Upon its appointment as receiver of a failed bank, FDIC is empowered to administer the assets of the failed bank. 12 U.S.C. § 1821(d)(2)(B). FDIC may liquidate those assets, or it may otherwise sell those assets to another bank through a purchase and assumption agreement. *Farnik v. F.D.I.C.*, 707 F.3d 717, 724 (7th Cir. 2013) (*citing* 12 U.S.C. § 1821(d)(2)(B)). Under such an agreement, FDIC and the acquiring bank may provide for the apportionment of the failed bank's assets and liabilities as they may agree. *Id*. How such assets and liabilities may be allocated generally is a matter of state law. *See Interface Kanner, LLC v. JPMorgan*

*Chase Bank, N.A.*, 704 F.3d at 932 (in diversity cases, forum state's choice of law rules govern substantive law to be applied).

Section 13.9 of the Purchase and Assumption Agreement between FDIC and First NBC is governed by federal law. "Under federal common law, the court looks to general contract principles in interpreting the [Purchase and Assumption] Agreement." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d at 932 (citations omitted). The plain meaning of the terms of the Purchase and Assumption Agreement govern their interpretation. *See Ellinger v. United States*, 470 F.3d 1325, 1338 (11th Cir. 2006) ("[W]here the essential terms of a contract are unambiguous the court 'will not look beyond the four corners of the document to determine the parties' intent.'") (citation omitted).

SE Property lacked standing to sue HCB because neither First NBC nor HCB expressly assumed Central Progressive's alleged obligations to SE Property with respect to the partition and distribution of the Deficiency Judgment or the alleged agreement to allow SE Property to take the lead on collection efforts. Applying federal common law, FDIC clearly assigned to First NBC all of Central Progressive's interests in the North Tip Loan and the Deficiency Judgment; however, neither First NBC nor HCB assumed Central Progressive's liabilities and/or obligations to SE Property. Indeed, at least one other court has specifically

held that neither First NBC nor HCB assumed any obligations or liabilities of Central Progressive.[12]

Thus, because neither First NBC nor HCB assumed Central Progressive's potential liabilities, the only way SE Property could have standing to sue HCB would be if it were an intended third party beneficiary of the Purchase and Assumption Agreement between FDIC and First NBC. However, this was plainly not the case because the express language of Section 13.10 of the Purchase and Assumption Agreement expressly excluded enforcement by any alleged third party beneficiaries:

> Nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the Receiver, the Corporation and the Assuming Institution any legal or equitable right, remedy or claim under or with respect to this Agreement or any provisions contained herein, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Receiver, the Corporation and the Assuming Institution **and for the benefit of no other Person**.

Purchase and Assumption Agreement at Section 13.10 (emphasis added), *supra* at 6 n.6.

---

[12] The United States District Court for the Southern District of Mississippi, Southern Division in *HCB Financial Corp. v. Kennedy***,** Case No. 1:10-cv-559-HSO-JMR, specifically determined in the context of transfer of assets from the FDIC to First NBC, and ultimately HCB, that "the record evidence indicates that the liabilities associated with the relevant Note [that is, the Mississippi Investors Loan] in this case remain with the FDIC as the receiver of [Central Progressive]." *see also HCB Financial Corp. v. Kennedy*, 570 Fed. App'x. 396 (5th Cir. 2014).

The Eleventh Circuit Court of Appeals has held previously that exclusions virtually identical to Section 13.10 of the Purchase and Assumption Agreement prevent parties such as SE Property from asserting claims under pre-receivership agreements such as the Participation Agreements, the agreement regarding the partition and assignment of the Deficiency Judgment, and the alleged agreement to allow SE Property to take the lead on collection efforts. *See, e.g., Interface Kanner*, 704 F.3d at 932-33

Because (1) neither First NBC nor HCB assumed any alleged obligations of Central Progressive, and (2) Section 13.10 of the Purchase and Assumption Agreement expressly proscribed third-party beneficiary status, SE Property lacked standing to impose liability on First NCB and HCB under any of Central Progressive's pre-receivership agreements. Because SE Property lacked standing to enforce any provisions of the Purchase and Assumption Agreement, this Court lacked subject matter jurisdiction. As a result, the Orders and the Final Judgment are void.

In *Interface Kanner*, the court concluded that a lessor may not enforce against an acquiring institution a pre-receivership lease between the lessor and a failed bank. There, the lessor, Interface Kanner, LLC, entered into a lease agreement (the "WaMu Lease") with Washington Mutual Bank, N.A. ("WaMu"), as lessee. After WaMu failed, FDIC entered into a Purchase and Assumption

Agreement with JPMorgan Chase Bank, N.A. ("Chase"), pursuant to which FDIC assigned, and Chase assumed, certain of WaMu's assets and liabilities. Chase decided not to assume the WaMu Lease and failed to make any lease payments under the WaMu lease. FDIC later disaffirmed the WaMu lease, also failing to make any lease payments to Interface Kanner.

Interface Kanner sued Chase and FDIC to enforce the WaMu Lease. All three parties moved for summary judgment. The district court granted Chase's motion for summary judgment because Interface Kanner and Chase did not enter into the WaMu Lease together. Accordingly, in order to enforce the WaMu Lease, Interface Kanner had to establish that it was a third-party beneficiary of the Purchase and Assumption Agreement between FDIC and Chase. The district court concluded that Interface Kanner could not enforce the WaMu Lease.

On appeal, the Eleventh Circuit held that Interface Kanner was not an intended third-party beneficiary of the Purchase and Assumption Agreement between FDIC and Chase. As a result, the district court lacked subject matter jurisdiction. Affirming the district court, the court explained that Interface Kanner had to prove the existence of a contract between it and Chase. The only way Interface Kanner could do so was to enforce its own interpretation of the Purchase and Assumption Agreement between FDIC and Chase. Interface Kanner argued that, under the Purchase and Assumption Agreement, Chase stepped into FDIC's

shoes as receiver for WaMu and assumed WaMu's obligations under the WaMu Lease.

The Eleventh Circuit rejected Interface Kanner's reasoning because Interface Kanner failed to show that FDIC and Chase "clearly intended" that third parties would be able to enforce the Purchase and Assumption Agreement. Under the Purchase and Assumption Agreement, FDIC and Chase expressly disclaimed third-party enforcement, and Interface Kanner could not rebut the express disclaimer. As a result, the Eleventh Circuit affirmed the judgment in favor of Chase.

Like Interface Kanner, SE Property sought to force its own interpretation of the Purchase and Assumption Agreement between FDIC and First NBC to impose liability on First NBC and HCB under the agreements to partition and assign the Deficiency Judgment and to allow SE Property to take the lead on collection. While not invoking the words directly, SE Property repeatedly has claimed to be a third-party beneficiary of the Purchase and Assumption Agreement; however, the third-party beneficiary disclaimer in *Interface Kanner* is nearly identical to the disclaimer in the Purchase and Assumption Agreement between FDIC and First NBC. Beyond the plain language of the Purchase and Assumption Agreement, SE Property has not offered any evidence that FDIC or First NBC ever intended SE Property to be a third-party beneficiary of the Purchase and Assumption Agreement.

Because SE Property was not (and is not) an intended third-party beneficiary of the Purchase and Assumption Agreement, it lacked standing to enforce the various alleged, pre-receivership agreements, and the Court lacked subject matter jurisdiction over SE Property's claims. Therefore, the Court should vacate the Final Judgment and dismiss with prejudice SE Property's claims in this case.

II.   **BECAUSE SE PROPERTY SOUGHT RELIEF PROHIBITED BY 12 U.S.C. § 1821(J) AND FAILED TO EXHAUST MANDATORY ADMINISTRATIVE REMEDIES UNDER 12 U.S.C. § 1821(D)(6), THIS COURT LACKED SUBJECT MATTER JURISDICTION OVER ALL OF SE PROPERTY'S CLAIMS.**

SE Property intentionally failed to disclose in this case (or in any other case) (a) that it filed a claim with FDIC related to the GulfSouth receivership, (b) that FDIC denied SE Property's claim as "not proven to the satisfaction of the receiver," and (c) that SE Property never appealed or litigated the denial of its claim to FDIC, choosing instead to dismiss the FDIC from the lawsuit with prejudice. **Furthermore, SE Property never filed an administrative claim with FDIC related to Central Progressive's failure.** Rather, SE Property stipulated to FDIC's dismissal with prejudice and then proceeded with its claims against HCB. (Docs. 127, 128). As a result, SE Property's claims in this case were barred by FIRREA's jurisdictional bar.

Section 1821(j) provides that "[e]xcept as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation

or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." 12 U.S.C. § 1821(j). Section 1821(j) is "broad and all-encompassing" and evidences Congress's intent "to prohibit any interference with the RTC as a receiver – either directly or indirectly." *Pyramid Constr. Co.,* 866 F. Supp. at 518-19 (*citing Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir.1994)). In *Pyramid Constr. Co.*, the court rejected efforts to enforce equitable and injunctive relief against post-receivership successor to the RTC sold certain of Western's real estate assets. There, Pyramid Construction Company ("Pyramid") sought injunctive relief prohibiting RTC's purchaser/successor from exercising any of its rights as the owner of the real estate. *Pyramid Constr. Co.,* 866 F. Supp. at 515-16. The court ultimately dismissed Pyramid's claims, concluding that Section 1821(j)'s anti-injunction provisions prohibited the court from taking any action with respect to the equitable relief Pyramid sought, even against an assignee/transferee of RTC. *Id*. at 518-19.

In this case, SE Property originally sought specific injunctive relief against all of the Participating Banks, including Central Progressive. *See, generally*, Doc. 1-1. It sought (and obtained) an equitable partition of the Deficiency Judgment, which necessarily included declaratory and equitable relief with respect to those portions of the Deficiency Judgment that HCB purchased from First NBC, as successor to FDIC, as Receiver of Central Progressive. In its original Complaint,

SE Property sought declaratory relief to interpret the Participation Agreements and affirmative relief requiring distribution of the Deficiency Judgment in *pro-rata* shares. *See, generally*, Doc. 1-1. Moreover, SE Property's Second Amended Complaint is replete with requests or demands for equitable, declaratory, or injunctive relief. *See, generally*, Doc. 101. SE Property requested, among other things, the following:

- Declaratory relief to void the assignment of the Originating Bank status to HCB, which then would have become property of FDIC;

- Declaratory judgment with respect to the equitable distribution of the Deficiency Judgment;

- Declaratory relief with respect to HCB's authority to control collection of the Deficiency Judgment; and

- Injunctive relief with respect to HCB's interests in the Deficiency Judgment.

*Id.* A vast portion of the relief sought was in direct contravention of Section 1821(j), and this Court lacked jurisdiction over the claims asserted and relief sought by SE Property, including the ultimate partition of the Deficiency Judgment.

Beyond FIRREA's anti-injunction provisions, application of FIRREA's administrative remedies turns on the plain meaning of FIRREA's jurisdictional bar. *See Ross v. Blake*, 136 S. Ct. 1850, 1856, 195 L. Ed. 2d 117 (2016) ("Statutory interpretation, as we always say, begins with the text . . . ."). Under FIRREA, a

party may seek judicial review of its claims only after exhausting its administrative remedies. 12 U.S.C. §§ 1821(d)(6), (d)(13)(D). Where a party fails to comply with FIRREA's administrative claims procedures, it may not seek judicial review or determination in **any** court. *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d at 1263. Importantly, "[s]uccessors-in-interest to the FDIC that purchase the assets of failed banks stand in the shoes of the FDIC and may assert as a defense that a party has failed to exhaust administrative remedies pursuant to FIRREA." *Sunsouth Bank v. First NBC Bank*, No. 1:13-CV-379-WKW, 2015 WL 9581418, at *4 (M.D. Ala. Dec. 29, 2015)*; accord Aber-Shukofsky v. JPMorgan Chase & Co*., 755 F. Supp. 2d 441, 447 (E.D.N.Y. 2010).

Section 1821(d)(13)(D) provides:

[N]o court shall have jurisdiction over --

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). The United States Supreme Court has held conclusively that when Congress legislates administrative exhaustion requirements as a condition precedent to filing suit, no court may implement or craft exceptions, equitable or otherwise to such mandates. *Ross*, 136 S. Ct. at 1856.

In *Triad Bank v. First-Citizens Bank & Trust Co.*, the court examined post-receivership breaches of agreements by FDIC's successors-in-interest. 85 F.Supp.3d at 1258. There, a failed bank entered into multiple participation agreements with Triad Bank ("Triad"). Triad sued the failed bank for failing to fund lending commitments related to a series of participation agreements. Subsequent to the failed bank's closure, FDIC assigned to First-Citizens Bank & Trust ("First Citizens") the pre-receivership participation agreements. *Id.* Triad ultimately sued First-Citizens, claiming that First-Citizens breached the participation agreements by failing to fund certain loan proceeds. *Id.*

Applying 12 U.S.C. § 1821(d)(13)(D), the *Triad* court dismissed Triad's claims. *Triad*, 85 F.Supp.3d at 1267-68. The *Triad* court determined that Triad's claims were "essentially pre-receivership claims or [ones which] had their genesis in the pre-receivership conduct of [the failed bank] and [the successor bank's] actions cannot be separated from [the failed bank's misconduct]." *Id.* at 1267 (internal citations omitted).

In its decision, the *Triad* Court explained that First-Citizens' alleged funding failure was "the very same breach" First-Citizens' predecessor committed. *Triad*, 85 F.Supp.3d at 1267. The court explained, "[t]he original contract obligation was one of [the failed bank]. It existed prior to and during receivership. And [successor bank's] alleged 'independent' breach has its origin in that earlier obligation." *Id.* at

1268. Thus, the court determined that Triad's claims were "essentially pre-receivership claims or [ones which] had their genesis in the pre-receivership conduct of [the failed bank]" and subject to FIRREA's jurisdictional bar. *Id.* at 1268-69 (*quoting Westberg*, 926 F.Supp.2d at 67 (interpretation of loan participation agreements requires "determination of rights with respect to [the underlying loans], and thus it falls squarely within the type of cases covered by Section 1821(d)(13)(D).").

Just as in *Triad*, the undisputed facts demonstrate that SE Property's claims for partition and assignment of the Deficiency Judgment had their genesis in both GulfSouth's and Central Progressive's pre-receivership conduct, and HCB's alleged breaches "'cannot be separated from' [their] misconduct." *Triad*, 85 F.Supp.3d at 1267. Because of the nexus between (1) Central Progressive's alleged breaches, and (2) First NBC and HCB's alleged breaches, SE Property's claims were subject to FIRREA's administrative exhaustion requirements and jurisdictional bar.

In *Westberg v. F.D.I.C.*, the Circuit Court for the District of Columbia examined FIRREA's jurisdictional bar. 741 F.3d 1301 (D.C. Cir. 2014). In *Westberg*, the court applied a "functional" test to determine the applicability of Section 1821(d)(13)(D). *Id*. at 1306. The "functional" test examines whether a plaintiff's claims are against the correct party against whom relief should be

sought: "Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process." 741 F.3d at 1306 (*citing Am Nat'l Ins. Co.*, 642 F.3d at 1144) (other citations omitted). According to the *Westberg* court, "[t]he functional approach ensures 'that plaintiffs cannot circumvent FIRREA's jurisdictional bar by drafting their complaint strategically." *Westberg*, 741 F.3d at 1306 (*quoting Am Nat'l Ins. Co.*, 642 F.3d at 1144, and *citing Farnik*, 707 F.3d at 723 (recognizing that creditors cannot escape FIRREA's mandatory administrative claims process through strategic pleading)).

*Westberg's* approach is precisely the analysis that should be applied in this case. SE Property repeatedly pleaded that it had entered into agreements with Central Progressive, as one of the Participating Banks, to partition the Deficiency Judgment and to take the lead on collection of the Deficiency Judgment. SE Property also alleged that, prior to Central Progressive's failure, disputes arose among the Participating Banks relating to their various agreements with respect to the Deficiency Judgment, including how to distribute the Property and how to partition and distribute the Deficiency Judgment. The allegations against HCB are a continuation of those pre-failure disputes, merely substituting HCB, as successor and assignee of First NBC, as successor and assignee of FDIC, as Receiver of Central Progressive. SE Property's claims against HCB relate directly to Central

Progressive's pre-receivership conduct and had their genesis in those pre-receivership agreements. Such allegations foreclose any further analysis as they all functionally are against Central Progressive. Therefore, the trial court lacked subject matter jurisdiction. *See* 12 U.S.C. § 1821(d)(13)(D).

At all relevant times, SE Property's counsel in this case was actively involved in all of SE Property's communications, efforts, and litigation with the Participating Banks (including Central Progressive) relating to the Deficiency Judgment, SE Property's claim to FDIC relating to GulfSouth, and this litigation. SE Property clearly was aware of its obligation to file an administrative claim with FDIC, yet it failed to do so in connection with the Central Progressive failure.

As discussed elsewhere in this memorandum, Central Progressive failed on November 18, 2011, before SE Property filed suit in this case. FDIC, as receiver for Central Progressive, assigned to First NBC many of Central Progressive's assets. On May 4, 2012, First NBC assigned to HCB some of the assets First NBC purchased from FDIC, including Central Progressive's interest in the North Tip Loan and the Deficiency Judgment.

Despite its knowledge of Central Progressive's failure and FDIC's appointment as receiver, SE Property never filed an administrative claim with FDIC related to Central Progressive's failure. In this case, however, SE Property sought specifically to enforce the alleged agreements among the Participating

Banks to partition the Deficiency Judgment and authorize SE Property to pursue collection remedies on behalf of all the Participating Banks, including Central Progressive.

In an effort to manipulate control of the Deficiency Judgment and the Originating Bank position not only under the VB Participation Agreement, but also the other Participation Agreements and the Deficiency Judgment, SE Property stipulated to dismissal of FDIC. As mentioned above, SE Property never disclosed in this case (or in any other case) (a) that it filed a claim with FDIC related to the GulfSouth receivership, (b) that FDIC denied SE Property's claim as "not proven to the satisfaction of the receiver," and (c) that SE Property never appealed the denial of its claim. With FDIC already joined as a party as GulfSouth's receiver, SE Property easily could have asserted its claims in this case against FDIC after disallowance of its claim. Instead, SE Property stipulated to FDIC's dismissal with prejudice and then proceeded with its claims against HCB. SE Property **NEVER** disclosed the foregoing to the Court or to HCB during the course of the litigation. At the very same time it was releasing FDIC with prejudice, SE Property was seeking declaratory and injunctive relief against HCB, intentionally misrepresenting to this court over and over again that it had no adequate remedy at law. SE Property's allegations and arguments were patently false.

In fact, the Court lacked jurisdiction over this case because SE Property failed to file any administrative claim with FDIC related to Central Progressive's failure. FIRREA's jurisdictional bar runs in favor of HCB, as the assignee of First NBC, as successor in interest to FDIC, as Receiver of Central Progressive. Therefore, the court lacked subject matter jurisdiction over SE Property's claims, and the Final Judgment is void.

WHEREFORE, Movant requests an order (a) vacating the Orders (Docs. 353 and 391) and the Final Judgment (Doc. 392) and (b) dismissing with prejudice SE Property's remaining claims, and for such other and further relief as is just and proper.

### CERTIFICATION OF COMPLIANCE WITH WORD LIMIT IMPOSED BY LOCAL RULE 7.1(F)

The undersigned hereby certifies that this Motion and Memorandum contain less than 8,000 words per the word count feature on the undersigned's Microsoft Word software.

Respectfully submitted,

*/s/ Robin B. Cheatham*
Robin B. Cheatham, Esq.
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Phone 504-581-3234
Fax: 504-566-0210
Robin.cheatham@arlaw.com

**COUNSEL**:

April D. Smith, Esq.
ADAMS AND REESE LLP
11 North Water Street, Suite 23200
Mobile, Alabama  36602
Telephone:  251-433-3234
Telecopier:  251-433-7733
April.smith@arlaw.com

*Attorneys for Defendant HCB Financial Corp.*

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this the 14th day of October, 2016 electronically filed he foregoing with the Clerk of the Court using the Pacer system which will send notification of such filing to the following and that I hereby certify that I have mailed by placing a copy of same in the United States Mail, first-class postage prepaid and properly addressed to those non Pacer participants:

Denis L. Durkin
Julie Singer Brady
Brandon T. Crossland
BAKER & HOSTETLER LLP
SunTrust Center, Suite 2300
200 South Orange Avenue
P.O. Box 112
Orlando, FL 32802
ddurkin@bakerlaw.com
jsingerbrady@bakerlaw.com
bcrossland@bakerlaw.com
*Attorneys for Plaintiff SE Property Holding, LLC*

and by regular U.S. Mail to:

FIRST NBC Bank
Marsha S. Crowle, Registered Agent
210 Baronne Street
New Orleans, LA  70112

*/s/Robin B. Cheatham*
Robin B. Cheatham